**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**WILEY EDU, LLC,**

**Plaintiff,**

**v.** **Civil Action No.: 2:23-cv-00550 (Berger)**

**WEST VIRGINIA STATE UNIVERSITY,**

**Defendant.**

**WEST VIRGINIA STATE UNIVERSITY'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The Eleventh Amendment of the United States Constitution bars West Virginia State University's (hereinafter, "WVSU") presence in this suit. WVSU is a state institution of higher education created by the Legislature and defined by W. Va. Code § 18B-1-2 and, as such is afforded the immunity of the Eleventh Amendment. Absent an exception, immunity "largely shields States from suits in federal court." *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994). No exception is applicable here. *First*, the State has not unequivocally consented to this type of suit in federal court. *Second*, Congress has not expressly authorized this type of suit pursuant to Section 5 of the Fourteenth Amendment to the United States Constitution. *Third*, the Wiley suit does not fall within *Ex parte Young*, 209 U.S. 123 (1908). Therefore, WVSU's presence in federal court is barred by the Eleventh Amendment, and as such it must be dismissed as a matter of law under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**STATEMENT OF THE CASE**

1. This case relates to a contract between Learning House, Inc., which Wiley Edu, LLC, (hereinafter, "Wiley") acquired in 2018, and WVSU. The contract is dated January 1, 2016.

2. Wiley provides marketing, recruiting, design work, and enrollment management services purporting to assist higher education institutions in their operation of online programs.

3. At the beginning of the contract, WVSU and Wiley held various meetings to examine the progress of the contract, address concerns, and discuss other topics relative to the services being provided.

4. During these meetings, WVSU expressed concerns to Wiley regarding the turnover in the company and Wiley's inability to address specific needs of WVSU staff due to the turnover within the enrollment management and student advising teams and Wiley's lack of communication with WVSU.

5. WVSU's concerns were not adequately addressed.

6. Wiley stopped performing any marketing for WVSU. Wiley materially breached the contract by failing to provide services for WVSU.

7. In 2017 or 2018, WVSU was in arrears for payment of some of their obligations, including Wiley.

8. In March of 2020, WVSU in-person classes were stopped on campus due to the COVID-19 pandemic, and all university courses were offered online.

9. In December of 2020, Wiley refused to release WVSU's online modules that would allow it to resume classes for the Spring of 2021, until WVSU entered a settlement agreement to pay overdue invoices.

10. In December of 2020, WVSU entered the settlement agreement with Wiley, and Wiley released the online modules to WVSU. WVSU was able to resume offering online courses for the Spring of 2021.

11. To date, WVSU has paid Wiley more than 2.4 million dollars.

12. By virtue of paying the amounts outlined in the settlement agreement, WVSU has paid Wiley for services never provided to the University because those services were previously ceased by Wiley.

13. Wiley brought this suit against WVSU based on diversity of citizenship, Compl. ¶ 2 (citing 28 U.S.C. § 1332), in the United States District Court for the Southern District of West Virginia.

**BURDEN**

Like all federal courts, this Court's jurisdiction is "limited" by "that power authorized by [the] Constitution." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This motion raises facial objections to this Court's jurisdiction, so it must take the allegations in the *Complaint* as true and determine whether they are jurisdictionally sufficient. *Thigpen*, 800 F.2d at 401 n.15. Generally, this Court must "presume [] that a cause lies outside" its authority unless "the party asserting jurisdiction" establishes the existence of that power. *Id.* But the Eleventh Amendment "is akin to an affirmative defense, which the [State] bears the burden of demonstrating," *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). Regardless, it operates as "a constitutional limit []" on federal jurisdiction. *Id.* at 542. And this Court must dismiss any cause of action where jurisdiction is lacking. *Kokkonen*, 511 U.S. at 377; *see also Wis. Dep't of Correc. v. Schacht*, 524 U.S. 381, 392-93 (1998).[1]

[1] The United States Court of Appeals for the Fourth Circuit's precedent has been "unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000). But the "recent trend" among the circuit's district courts has been to "treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Witmore v. W. Reg'l Jail*, No. 3:18-cv-01483, 2019 WL 3756396, *2 (S.D.W. Va. July 19, 2019) (quoting *Haley v. Va. Dep't of Health*, No. 4:12-cv-0016, 2012 WL 5494306, *2 n2 (W.D. Va. Nov. 13, 2012).

## ARGUMENT

Wiley invokes this Court's diversity jurisdiction, 28 U.S.C. § 1332, in its attempt to obtain an order awarding Wiley damages, but WVSU is an agent of the State of West Virginia and, therefore, is entitled to Eleventh Amendment immunity. This immunity bars WVSU's presence in this suit unless an exception to that immunity exists. But none of these exceptions are applicable here. Therefore, the WVSU immunity stands, and it must be dismissed from this suit.

### I. WVSU IS ENTITLED TO IMMUNITY UNDER THE ELEVENTH AMENDMENT.

The Eleventh Amendment "largely shields States from suits in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." *Hess v. Port Authority Trans-Hudson Corp*., 513 U.S. 30, 39 (1994). The amendment's text provides that federal jurisdiction "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. 11. Taken literally, the amendment "restrict[s]" cases—like this one—that invoke "diversity jurisdiction." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). But it has also consistently been understood to broadly confirm the states' fundamental sovereignty, *cf. Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 779 (1991), and to grant "an unconsenting State" "immun[ity] from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (hereinafter, "*Pennhurst II*").

Clearly, the State of West Virginia is entitled to this immunity. But here, Wiley has not sued the State directly; rather, it has sued WVSU—an entity of the State. Yet this is of no moment. The Eleventh Amendment applies "not only [to] actions in which a State is actually named as the defendant" but also to suits "against state agents." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425,

429 (1997). "[A] suit in which the State or one of its agencies . . . is named as the defendant" is clearly "proscribed by the Eleventh Amendment." *Pennhurst II*, 465 U.S. at 100.

The Eleventh Amendment prevents WVSU from being brought into federal court, and this "jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst II,* 465 U.S. at 100. It applies equally to "suits in equity" — such as declaratory judgment actions—"as well as suits at law." *Id.* at 101 (quoting *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)). Wiley's suit names "one of [West Virginia's] agencies." *Pennhurst II*, 465 U.S. at 100. Such suits in federal court are clearly "proscribed by the Eleventh Amendment." *Id.* The suit must be dismissed.

## II. NO EXCEPTIONS TO THE ELEVENTH AMENDMENT ARE APPLICABLE.

The jurisdictional bar of the Eleventh Amendment is not absolute. *Port Authority Trans-Hudson Corp. v. Freeney*, 495 U.S. 299, 304 (1990). Instead, there are three exceptions that allow a private litigant to sue a state in federal court, *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012): *first*, where the state waives its immunity; *second*, where Congress unequivocally and validly abrogates the States' immunity pursuant to Section 5 of the Fourteenth Amendment of the United States Constitution, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000); and *third*, where the private litigant seeks prospective enforcement of federal rights under *Ex parte Young*, 209 U.S. 123 (1908).[2]

However, these exceptions are narrow, and Wiley cannot avail itself of any of them.

### *i. West Virginia has not waived its sovereign immunity.*

Wiley cannot rely on the first exception to the Eleventh Amendment because WVSU has

[2] The Fourth Circuit has identified six exceptions to Eleventh Amendment immunity. *S.C. State Ports Auth. v. Fed. Maritime Comm'n*, 243 F.3d 165, 170 (4th Cir. 2001). But three of these are clearly inapplicable to suits brought by private parties against state agencies. *Id.* (identifying "suits brought by the Federal Government," suits "against municipal corporations or other lesser governmental entities," and suits against state officials "in their individual capacity" as additional exceptions).

not waived its immunity. The Eleventh Amendment does not bar federal jurisdiction where a state waives its immunity and consents to the suit in federal court. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). However, a state's waiver is a "voluntary" decision. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Courts must apply a "stringent" test to determine if a state has waived its immunity. *Id.* Under this test, waiver will only be found where a state "voluntarily invokes" federal jurisdiction or makes a "clear" and "unequivocal" declaration that "it intends to submit itself" to federal jurisdiction. *Id.* at 676.

This declaration may appear in a state's statute or constitutional provision. *Westinghouse Elec. Corp. v. W. Va. Dep't of Highways*, 845 F.2d 468, 470 (1988), *cert. denied*, 488 U.S. 855 (1988). However, it cannot be found by implication. *Sossamon*, 563 U.S. at 284. Nor is it sufficient that a state consents to suits in its own courts, *id.* at 285, expresses a general intent to "sue and be sued," *Coll. Sav.*, 527 U.S. at 676 (quoting *Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 149-50 (1981) (per curiam)), or authorizes suits against it in "in any court of competent jurisdiction." *Coll. Sav.*, 527 U.S. at 676 (quoting *Kennecott Copper Corp v. State Tax Comm'n*, 327 U.S. 573, 577-579 (1946)). Instead, federal courts must "indulge every reasonable presumption against" a finding that a state waived its Eleventh Amendment immunity. *Coll. Sav.*, 527 U.S. at 682.

But this statute does not waive West Virginia's immunity to suits in federal court. West Virginia's Eleventh Amendment immunity "encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst II*, 465 U.S. at 99 (emphasis in original). West Virginia has not unequivocally consented to Wiley's suit in federal court.

*ii. Congress has not unequivocally and validly abrogated West Virginia's immunity.*

Wiley also cannot rely on the exception for a Congressional abrogation of immunity. This

exception recognizes that Congress may abrogate the states' Eleventh Amendment immunity and subject them to suits to enforce rights protected under the Fourteenth Amendment. *Pennhurst II*, 465 U.S. at 99. But abrogation "upsets 'the fundamental constitutional balance between the Federal Government and the States.'" *Port Auth. Trans-Hudson Corp., v. Freeney*, 495 U.S. 299, 305 (1990) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 227 (1989)). Therefore, it is subject to "a particularly strict standard." *Freeney*, 495 U.S. at 305. Specifically, federal courts must find that Congress made "its intention unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985). And where it does so, there must be "congruence and proportionality" between the Fourteenth Amendment "injury to be prevented or remedied and the means adopted to that end." *Kimel*, 528 U.S. at 81.

This exception is inapplicable here because Wiley has not asserted any federal claims—much less any claims based on valid Congressional enactments to enforce the Fourteenth Amendment. Rather, its suit is only in federal court based on diversity jurisdiction and amount in controversy. The statute providing for diversity jurisdiction, 28 U.S.C. § 1332, does not "unmistakably abrogate" Eleventh Amendment immunity. *Cf. Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (recognizing that States are not "citizens of a state" for purposes of diversity jurisdiction). Nor was diversity jurisdiction established to enforce the Fourteenth Amendment. U.S. Const. amend. XIV, § 5. Congressional abrogation of immunity is simply inapplicable here.

*iii.* Ex parte Young *is equally inapplicable.*

The *Ex parte Young* exception to Eleventh Amendment immunity is similarly inapplicable. The exception permits a private litigant to sue "State officials" in federal court "for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg*, 248

F.3d at 292. To "end a continuing violation of federal law" *Seminole Tribe*, 517 U.S. at 73, federal courts may "award an injunction" restraining the State official's "future conduct" but may not award "retroactive monetary relief." *Pennhurst II*, 465 U.S. at 103.

*Ex parte Young* has no application to state law claims. The doctrine "rests on the need to promote the vindication of federal rights", *Pennhurst II*, 465 U.S. at 105, and authorizes prospective relief to "prevent ongoing violations of *federal law*." *CSX Transp*., 138 F.3d at 540-41 (emphasis added). But it does not authorize a federal court to enjoin state officials "on the basis of state law." *Pennhurst II*, 465 U.S. at 106. In fact, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* In such cases, a state agency's presence in federal court "conflict[s] with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst II*, 465 U.S. at 106. Those principles would be "better served by encouraging private citizens to enforce their claims . . . in State, rather than federal, court." *Cf. Bragg*, 248 F.3d at 293. The *Ex parte Young* exception is inapplicable here.

In the alternative, this action must be dismissed because the University is a State agency which carries insurance. WVSU submitted this complaint to the West Virginia Board of Risk & Insurance Management (BRIM), and BRIM denied the claim in a letter dated September 27, 2023. (See attached letter from BRIM).

Article VI, Section 35 of the West Virginia Constitution, which established the State's, sovereign immunity from suit, states:

> [t]he State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

However, to "ameliorate the harshness of the constitutional bar to suits against the State" the Legislature created the Court of Claims "which [was] authorized to consider and approve claims against the State *not otherwise cognizable in the regular courts of the State*, and to recommend an award to the Legislature (emphasis added)." *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 754 n.7, 310 S.E.2d 675, 686 n.7 (1983).

In addition, the Legislature enacted West Virginia Code § 29-12-5, which authorizes the State Board of Risk and Insurance Management to procure liability insurance on behalf of the State, its agencies, and agents, waiving the State's sovereign immunity. In this respect, the Supreme Court has held as follows:

> "W.Va. Code, 29-12-5(a) (1986), provides an exception for the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy 'shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits.'" Syl. pt. 1, *Eggleston v. W. Va. Dept. of Highways*, 189 W.Va. 230,429 S.E.2d 636 (1993).

Syl. Pt. 2, *Parkulo v. W. Va. Bd. of Prob. & Parole*, 199 W. Va. 161,483 S.E.2d 507 (1996).

In this matter, the determinative issue is whether Claimants' alleged harms could be litigated in the courts of the state, which they could if insurance coverage exists. "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, *fall outside the traditional constitutional bar to suits against the State*." *Syl. Pt. 2, Pittsburgh Elevator Co. v. W. Va. Bd. of Regents, supra.*

Therefore, if a monetary claim against the State is covered by the State's insurance and recovery is sought under the insurance policy (as opposed to the State Treasury), then the claim is not barred by the State's sovereign immunity and may be maintained in the courts. *On the other hand, if a claim for monetary damages is not covered by the State's insurance, such claim would*

*be barred by the State's sovereign immunity. The Commission does not have jurisdiction over the former, but does the latter.* (Emphasis added).

The interplay between the jurisdiction of this body, the sovereign immunity of the State of West Virginia, and the insurance coverage for the same as relating to the jurisdictional bar set forth in West Virginia Code § 14-2-14(5) has been previously adjudicated by the Supreme Court of Appeals of West Virginia. *See State ex rel. McLaughlin v. W. Va. Court of Claims*, 209 W. Va. 412, 549 S.E.2d 286 (2001).

In *McLaughlin*, an injured motorist petitioned for a writ of mandamus compelling the Court of Claims to re-docket her claim for personal injury damages in excess of the limited amount of insurance available to her under the State's insurance policy, which was awarded in Circuit Court. The Supreme Court denied the writ and held that "the Legislature has withheld from the Court of Claims the power to consider '*any claim...[w]ith respect to which a proceeding may be maintained against the State, by or on behalf of the claimant in the courts of the State*' (emphasis added)." *McLaughlin*, 209 W.Va. at 416, 549 S.E.2d at 290.

In addition, the Defendant was improperly served because the Plaintiff failed to deliver a copy of the summons and the complaint to its chief executive officer pursuant to FRCP 4 (j) (2) (B).

## CONCLUSION

For the foregoing reasons, WVSU respectfully requests that this Court grant its *Motion to Dismiss* pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. As an agent of the State of West Virginia, WVSU cannot be brought into federal court unless one of the narrow exceptions to Eleventh Amendment immunity applies. Here, none of them apply. The Eleventh Amendment bars West Virginia's presence in this suit and requires WVSU's dismissal without prejudice. In

the alternative, because BRIM does not cover this action, this forum is not the proper venue, and this matter should be dismissed on those grounds without prejudice.

**Respectfully submitted,**

**WEST VIRGINIA STATE UNIVERSITY**

**By counsel**,

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

s/ Gretchen A. Murphy

GRETCHEN A. MURPHY (WVSB# 5887)
ASSISTANT ATTORNEY GENERAL
Higher Education Policy Commission
1018 Kanawha Boulevard, E. Suite 700
Charleston, West Virginia 25301
Gretchen.Murphy@WVHEPC.edu

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**WILEY EDU, LLC,**

**Plaintiff,**

**v.** **Civil Action No.: 2:23-cv-00550**

**WEST VIRGINIA STATE UNIVERSITY,**

**Defendant.**

**CERTIFICATE OF SERVICE**

I, Gretchen A. Murphy do hereby certify that a true and exact copy of the foregoing document has been served on Plaintiff via the Electronic Court Filing system on this 6th day of October, 2023.

s/ *Gretchen A. Murphy*
GRETCHEN A. MURPHY (WVSB# 5887)
ASSISTANT ATTORNEY GENERAL